By the Court. Duer, J.
The plaintiffs, in our opinion, are entitled to judgment upon the verdict, for the amount, with interest and costs, for which it was rendered.
We can allow no weight to the objections that have been taken to the validity of the mortgage. It was executed in Nova Scotia, upon a British registered vessel, and it is, therefore, certain, that, in judging of its validity, we must be governed by the rules of the common law, and not by the provisions of the Revised Statutes, which can only apply to mortgages executed within, or relating to property at the time within, the jurisdiction of the state. As to the common law, without entering upon a discussion of the authorities, we are satisfied, that there never has been a period in its history, when the continuance in possession of a mortgager, until a default in payment, has been deemed per se evidence of a fraud, rendering the security void as against creditors or purchasers; nor have we been able to discover, nor can we believe, that, prior to the adoption of the Revised Statutes, an opposite doctrine ever prevailed in the courts of this state. The cases to which we were referred upon the argument, were all of them cases in which the instrument of transfer was, not a mortgage, but an absolute bill of sale.
The objection that the mortgage, with a view to cover future advances, was given for a larger sum than the plaintiffs had advanced at the time of its date, was not much pressed upon the argument, and is plainly untenable. The mortgage, when given, was certainly valid for the sum which the plaintiffs had then advanced, and was certainly valid, when they asserted their title, for the sum that was then due to them, and which, it appears, without *441 including subsequent advances, largely exceeded the amount for which the verdict was rendered.
Even were the provisions of the Revised Statutes applicable to the case before us, we should still entertain no doubt as to the validity of the mortgage. We consider the law in this state as now settled, that when the mortgager of chattels, by the terms of the mortgage is to retain the possession until a default in payment, the provision does not render the mortgage void, but gives to the mortgager a legal right of possession during the period so limited; and it is a necessary consequence that the mortgagee can have no right to interfere with or disturb the possession, which he has thus agreed that the mortgager shall retain. This doctrine was recognized by this court as the established law, in Hull v. Carnley, (2 Duer, 99,) and although our judgment in that case has since been reversed in the Court of Appeals, this particular doctrine was not only unquestioned, but was distinctly affirmed, and was even made a ground of the decision. The chattels mortgaged, in that case, were sold by the sheriff, under an execution, during the time the mortgager, by the terms of the mortgage, was entitled to the possession, and the plaintiff, the mortgagee, claimed to recover the value of the property upon the ground that the sale, being absolute and not limited to the possessory right of the debtor, was unwarranted and wrongful. The Court of Appeals held that the mortgage was a valid instrument, but reversed our judgment—which was in favor of the plaintiff—upon two grounds: First, that the sale was justified by the process under which the sheriff acted; and, second, that the plaintiff, not having the right of possession when the alleged injury was committed, was not warranted to bring the action. (1 Ker. p. 506-10.)
By the terms of the present mortgage, the plaintiffs were not to enter into the possession of the vessel until the expiration of three months from its date, and by a necessary implibation the debtor, McLellan, was to retain the possession during this period. The plaintiffs, therefore, so far from being bound to take immediate possession, would have violated the rights of the mortgager, and rendered themselves liable as trespassers, had they attempted to do so. If it was neither their duty, nor within their power, to take the possession, it is impossible to say that their omission to do so was evidence of a fraudulent intent.
*442 I shall close my observations on this branch of the case by referring to a somewhat recent decision in the Court of Exchequer, which it is, perhaps, to be regretted, escaped the attention both of this court and of the Court of Appeals in Hull v. Carnley. The decision has a direct bearing upon the questions before us, and affords a very clear illustration of the law, as now understood in England.
Fenn and others v. Bettleston and others, (8 Law & Eq. E. 483, S. C. 21; Law Jour. Excheq. N. S. 41.) The action was trover for goods, and the material facts of the case were these:—
A. conveyed the goods in question to B. by a deed, which, as it was conditioned to be void on the payment of a certain sum on a future day, was in effect a mortgage. The deed contained a provision that, until a default in payment of the principal sum or interest, A., the mortgager, his executors, &e., should be allowed to hold and enjoy the possession of the goods. A., during the time he was thus entitled to the possession, became a bankrupt, and the goods passed into the possession of his assignees, by whom, but while the right of possession given by the deed still continued, they were subsequently sold. B., the mortgagee, before that time, had transferred his title to the plaintiffs, who brought the action against the assignees to recover the value of the goods, upon the ground that the sale made by them, being absolute, was a wrongful conversion.
The Judge, upon the trial, directed a verdict for the plaintiffs, for the value of the goods, with leave to the defendants to move to set it aside, and enter a nonsuit. The cause was before the court upon this motion.
The validity of the deed was not contested, nor doubted; but the argument turned entirely upon the questions, whether the agreement, that the mortgager should retain the possession of the goods until the day fixed for the payment of the debt, gave him a legal right of possession for the stipulated term, or was a mere covenant, not affecting an immediate right of possession in the mortgagee; and whether the sale, made by the assignees, was justifiable, or a wrongful conversion. Upon the first question, the court held, that the effect of the agreement was not to give to the mortgager the possession and use of the goods, as a mere bailee, but a right of possession until the end of the stipulated *443 term; and, consequently, that, had the goods been taken by a third person from the custody of the mortgager, during the term, the plaintiffs, having then no present right of possession, could not have maintained an action for their recovery. But, upon the second question, they held, that the voluntary act of the assignees, in selling the goods, absolutely, during the term, as it prevented their delivery to the plaintiffs, in case of a default in payment, at the end of the term, was a conversion, which entitled the plaintiffs to judgment upon the verdict.
Overruling, as we must do, all the objections that have been raised, in the present case, to the validity of the mortgage, it follows, that the plaintiffs, on the 23d of August, became, at law, the absolute owners of the vessel, as there was then a default in the payment of their debt, and the temporary right of possession in the mortgager was then determined. The plaintiffs, therefore, from that day, were entitled, as owners, to demand and recover the vessel, or its value, from any and every person by whom the possession, no matter under what pretext or title, might then be held. If the vessel, therefore, was, on that day, and subsequently, in the possession, or under the control of the defendants, and they refused, upon a proper demand, to surrender her to the plaintiffs, they must be liable in the present action.
The defendants, on the preceding 25th of July, had caused the vessel to be seized, under an attachment against the property of McLellan, the former owner, and the complaint avers, and the answer, by not denying the allegation, admits, that the seizure Was made by their express direction. The attachment, it appears, from its terms, was not issued for the general benefit of the creditors of McLellan, but was a process, in the commencement of a suit,
. instituted by the defendants, in their own names, and for their own exclusive benefit. It was, therefore, a proceeding, subject, like all other proceedings in the action, to their personal control, to be prosecuted and enforced, or revoked and abandoned, at their pleasure.
The regularity of the attachment, and the jurisdiction of the court, by which it was issued, are not denied; and, as the temporary interest of McLellan in the vessel had not then ceased, it is not denied that the original seizure was justifiable and-lawful. Such an interest, it has been decided, in our own courts, is a *444 proper subject of levy, under an execution, and, therefore, under an attachment; and it was conceded, by the counsel for the plaintiffs, and we shall, therefore, concede, that such is also the law in Connecticut. But, on the 23d of August, the interest of McLellan in the vessel wholly ceased, and we can perceive no reasons for doubting that, from that time, the detention of the vessel, under the attachment, contrary to the will of the plaintiffs, the true and only owners, was just as unlawful, as the original seizure would have been, if they had possessed, at that time, the same exclusive title. Hence, if this detention may be justly attributed to the acts or authority of the defendants, it is a necessary conclusion, that they were guilty of the conversion with which they are charged. As the answer admits that the delivery of the vessel was demanded from the defendants, on behalf of the plaintiffs, after the 23d of August, and before the commencement of this action, and as the fact was very clearly proved, upon the trial, it is evident that the subsequent detention of the vessel must be attributed to them, if it was in their power, and it was their duty, to have complied with the demand.
We think, that they had the legal power, and that it was their legal duty, to comply with the demand, and that they have rendered themselves liable to the plaintiffs, by their refusal.
What are the grounds, I propose next to consider, upon which this liability of the defendants, is denied ?
It is said, that the vessel, when its delivery was demanded, was still held, by the officer in Connecticut, under the attachment, and was, therefore, in the custody of the law; and we were told that, where property is thus situated, it is settled law that the owner can maintain no action, for its recovery or value, but must seek his remedy in an application to the court under whose process, or order, the property is held; and, in support of this broad proposition, we were referred to the decision of the Supreme Court, in the early case of Jenner v. Jolliffe, as a controlling authority. (6 John. 9; 9 id. 381.)
The proposition, that property, in the custody of the law, cannot be made the subject of a new and separate action, when properly understood and limited, is undeniably true, and the case to which we were referred, the purport of which was greatly misunderstood, well illustrates the true meaning and application of the rule.
*445 The plaintiff, in Jenner v. Jolliffe, brought the action, which was trover, to recover the value of a quantity of timber, of which he was the owner, and which the defendants had caused to be seized, under an attachment, in Canada; but, as it appeared, that the process was regular, on its face, was issued by a court of full jurisdiction, and, by its terms, directed the seizure of the very property in question, as that of the plaintiff, who was named as the defendant in the suit, the Supreme Court properly, and necessarily, held, ¡that the action was not maintainable. This case, therefore, only proves what, probably, has never been denied, or doubted, that a defendant, in a suit in which his property is seized or attached, under a process or order of the court, and to abide its final determination, is not permitted to try the validity of the proceeding—when the jurisdiction of the court is undoubted—as plaintiff in a separate action; for this is the very question to be determined in that to which he is already a party, as the defendant
But the ease is widely different, when the property seized is that óf a stranger to the action, and the seizure is not directed by the terms of the process. The property seized is not then in the custody of the law, for the seizure is, itself, an unlawful act, which renders the officer making, and the plaintiff directing it, at once, liable as trespassers, and gives, to the true owner, an immediate right of action against them. The familiar case is, where the goods of A. are seized, under an execution against the property of B.; and whether the seizure is made under an execution, or under an attachment, is plainly immaterial. What has been said of an unlawful seizure, must be equally true of an unlawful detention. Where the goods detained belong to a stranger to the action, and their detention is not justified by the terms of the process, they are not in the custody of the law, and the owner is, at once, entitled to the remedy, by an action against those who wrongfully withhold from him the possession to which he is entitled. Here, the vessel, when the interest of McLellan had ceased, was no longer in the custody of the law, and, as its detention was no longer justified by the terms of an attachment, which related to the property of McLellan alone, the plaintiffs had an immediate right of action against those to whom the wrongful detention was imputable.
*446 We think, that in reason, and in law, it was imputable to the defendants.
The demand of the vessel was properly made Rom the defendants themselves, and was properly made in the place where they were found. They were the sole plaintiffs in the suit in which the attachment was issued—it was by their direction that the vessel was seized, and hence, the officer, holding the attachment, acted as them agent in making the seizure. It was not a manual delivery of the vessel that was asked, but an order, directing the officer, as their agent, to make that delivery to the plaintiffs. It was at them own peril—the peril of showing that the plaintiffs were not, as they claimed to be, the owners of the vessel, that they refused to comply with such a demand; and, as to their power, to direct a delivery by the officer, we cannot doubt that they had the same right, to release the property from an attachment, in which they alone were interested, that they would have had to release it from an execution, had such been the form and nature of the process by which it was held; and, if such was their right, its exercise was them duty.
As to the objection, that, when the vessel was demanded, no tender was made of the fees of the officer, and of the other costs of the attachment, it scarcely deserves attention. No such payment, or tender, was required; and, had it been required, the plaintiffs were under no obligation to comply with the request. The delivery, to which, as owners of the vessel, they were entitled, was unconditional, and, by refusing to make it, the defendants converted the property to their own use. It is plain, from the evidence, that they refused to deliver the vessel, because they meant to retain it, under the attachment, in order that its proceeds, when sold, might be applied to the satisfaction of their own debt. It is plain, that, with this view, they meant to deny, wholly, the title of the plaintiffs ; and, as the denial has proved to be groundless, they have no right to complain that judgment is rendered against them.
Judgment for plaintiffs, with costs.